U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 6 2021

CLERK, U.S. DISTRICT COURT
By_____ Deputy

| | | |
|---|---|---|
| MARCUS A. MURPHY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:20-CV-190-Z |
| | § | |
| AMANDA CAMERON MOORE, | § | |
| BLATTNER ENERGY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Moore's and Blattner Energy's respective Motions to Dismiss (ECF Nos. 7, 12). Both Defendants also move for sanctions under Rule 11 (ECF Nos. 21, 23). After reviewing the Motions, pleadings, and applicable law, the Court **GRANTS** Defendants' Motions to Dismiss. The Court also **GRANTS** Defendants' Motions for Rule 11 Sanctions.[1]

### BACKGROUND

This case is the second of three suits brought by Plaintiff Marcus Murphy in this Court. *Murphy v. Amarillo Nat'l Bank*, No. 2:20-CV-048-Z, 2021 WL 40779 (N.D. Tex. Jan. 5, 2021); *Murphy v. Hernandez*, No. 2:20-282-Z (N.D. Tex. 2020). In all three of his suits, Plaintiff, a licensed attorney, has chosen to represent himself. Here, Plaintiff sued Defendants for trespass, malicious prosecution, and intentional infliction of emotional distress. All these claims arose from an alleged altercation between Plaintiff and Defendant Moore which resulted in the criminal prosecution of Plaintiff.

---

[1] Blattner's Application for Admission *Pro Hac Vice* (ECF No. 14) is **DENIED** as moot and for lack of proper local counsel. Local counsel must be located within 50 miles of the courthouse in the division in which the case is pending.

## A. Plaintiff is not entitled to leniency based on his *"pro se"* status

Plaintiff is a lawyer licensed in Colorado who is proceeding *pro se* in this case — he is not licensed in Texas or admitted to practice before this District. Further, Plaintiff has not sought to proceed *pro hace vice* as an attorney in this matter, since he is representing only himself and there are no other plaintiffs to this matter. Plaintiff argues he is entitled to leniency in his pleadings before the Court because he is technically a *pro se* litigant.

While *pro se* parties are normally accorded more leniency in the construction of their pleadings, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court need not afford a licensed attorney such leniency when the attorney appears *pro se*. *Olivares v. Martin*, 555 F.2d 1192, 1194 n. 1 (5th Cir. 1977); *see also Villalobos v. United States*, CR B:12-374-1, 2018 WL 2248517, at *9 (S.D. Tex. Mar. 27, 2018), *report and recommendation adopted*, CR B-12-374-1, 2018 WL 2234838 (S.D. Tex. May 16, 2018).

Additionally, throughout his Complaint and Responses, Plaintiff continually offers legal conclusions by using the phrase "that in Plaintiff's professional legal-opinion, as an asserted-fact." *See e.g.* ECF No. 3 at 2, 5, 8, 12, 13, 15, 16, etc. Although the Court is unsure what Plaintiff means when he uses that phrase,[2] Plaintiff apparently believes his conclusions should have greater weight because he is a trained lawyer. It is only *fair* then to hold Plaintiff to the standards expected of a trained lawyer. Moreover, this determination should come as no surprise to Plaintiff as this Court has already determined that Plaintiff should be held to same standard as other lawyers. *Amarillo Nat'l Bank*, 2021 WL 40779 at *4.

---

[2] It seems Plaintiff believes if he, as a lawyer, offers his legal conclusions then they should count as facts sufficient to avoid dismissal at the 12(b)(6) stage. While plaintiffs may offer self-serving statements of facts, *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 392 (5th Cir. 2020) (Ho, J., concurring), mere legal conclusions are not, *by definition*, statements of fact.

Plaintiff's pleadings are rambling, unprofessional, barely understandable, and, as explained below, frivolous. Furthermore, even if the Court were inclined to afford Plaintiff the leniency due to a *pro se* litigant, the result in this case is no different. "[P]ro se litigants must still comply with the law and procedural rules." *Washington v. E. Baton Rouge Par. Sch. Sys.*, 471 F. App'x 306, 306 (5th Cir. 2012). Even under a lenient standard of pleading, Plaintiff's claims do not entitle him to relief.

### B. Plaintiff's Factual Allegations

Plaintiff Marcus Murphy is a licensed lawyer who resides in Colorado but maintains a secondary residence at 307 Garrett St. Borger, Texas 79007. ECF No. 3 at ¶ 10 ("Comp."). Defendant Amanda Moore was, at the time of the alleged incident, an employee of Defendant Blattner Energy.

On the evening of August 13, 2018, Plaintiff saw Moore enter and exit a pick-up truck with Blattner Energy markings at 305 Garrett Street. *Id.* This house, located next to Plaintiff's house, was the residence of Defendant Moore's mother. ECF No. 17 at 15. Plaintiff specifically alleges that Moore, who was wearing Blattner clothing, was "off-duty." Comp. ¶ 10.

At some point in time that evening, Plaintiff alleges Moore started an argument. *Id.* Plaintiff does not allege any facts regarding the circumstances before, during, or after the argument. Plaintiff alleges during the argument that Moore said "What the F*** is your problem, dude? What do you think you're some kind of cop? I'm gonna get you fired, arrested, and thrown in jail, or I'll shoot you myself." *Id.* ¶ 16.[3]

---

[3] These facts are the *entirety* of the facts alleged by Plaintiff regarding Moore's alleged trespass and threats. The Court scoured the Complaint in vain searching for further facts that could bolster Plaintiff's arguments — such as when did the argument occur, where did it occur, how long did it last, when, if ever, did Moore trespass onto Plaintiff's property, etc. Those facts simply do not exist in Plaintiff's Complaint.

Plaintiff further alleges Moore "stayed in her company-vehicle in front of Plaintiff's resident that night until 2:00am, while he was sleeping." *Id.* During that time, Moore had a loaded handgun in her glove box. *Id.* No other altercations took place that evening.

On December 5, 2018, Plaintiff was criminally prosecuted for "Disorderly-Conduct" in Borger municipal court for his actions stemming from the August 13, 2018 altercation. *Id.* ¶ 13. Plaintiff contends Moore falsely testified during the trial that Plaintiff verbally threatened her. *Id.* Plaintiff alleges the jury acquitted him. *Id.* But Plaintiff then contends new, still-pending charges of "Disorderly-conduct" were filed in Borger municipal court on March 26, 2019 and April 26, 2019. *Id.*

### LEGAL STANDARDS

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal marks omitted).

The Court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). After assuming the veracity of any well-pleaded allegations, the Court should then "determine whether they plausibly give rise to an entitlement of relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). This standard of "plausibility" is not necessarily a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." *Id.* (internal marks omitted). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

ANALYSIS

This case is before the Court solely via diversity jurisdiction — all of Plaintiff's claims in this case arise under Texas state law. Accordingly, this Court's task is to apply substantive Texas law to the facts alleged in this case under the Rule 12(b)(6) standard.[4] Having done so, the Court finds that Plaintiff has failed to state a claim for any of his causes of action.

---

[4] Plaintiff makes several confusing statements in his Response that imply that a Rule 12(b)(6) motion is inappropriate in a diversity case. For example, Plaintiff states, "Defendant-Blattner-Energy's counsel betrays their true-motives: to pre-argue the case with substantive State-law, while Plaintiff-Murphy relies on a federal, case-law line of reasoning (*i.e., stare decisis*) for the procedural, not substantive-law, issue of a frivolous 12(b)-motion, per the *Erie*-doctrine." ECF No. 17 at 16. If Plaintiff is arguing that Rule 12 pleadings standards are not applicable in diversity cases, that argument is squarely foreclosed by *Hanna v. Plumer*, 380 U.S. 460 (1965) and *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393, 410 (2010) (holding that the manner and details of pleading in the federal courts are procedural rules that are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action.).

## A. Plaintiff fails to state a claim for trespassing

"To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Russell v. Coward*, 2014 WL 5093990, at *2 (Tex.App.—Waco 2014, no pet.) (quoting *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex.App.—Fort Worth 2006, pet. denied)).[5]

Upon a thorough examination of Plaintiff's Complaint, the Court determines that Plaintiff has *not* alleged (1) that Moore entered Plaintiff's property at 307 Garrett Street, (2) that Moore's entry was physical, intentional, and voluntary, and (3) that Moore's trespass caused injury to Plaintiff.

For ease of analysis and understandability of the Court's conclusion, the pertinent allegations from the Complaint are reproduced below, broken into paragraphs for ease of reference:[6]

1. On the evening of Mon., Aug. 13, 2018 (8-13-18) at Plaintiff's secondary-residence, 307 Garrett St, Borger, TX 79007; Plaintiff-Murphy suffered a wrongful, unauthorized Temporary-Trespass by Defendant Blattner-Energy's off-duty employee, Defendant-Moore, who (1) entered (2) the property of Plaintiff (3) without the Plaintiff's (*i.e.*, property-owner) consent or authorization.

2. Plaintiff-Murphy saw Defendant-Moore entering and exiting a white Blattner-Energy pickup-truck, with either License-Plate #: AYW-956 or AYX-589, on the evening of Mon., Aug. 13, 2018 (8-13-18) at the house located at 305 Garrett St, Borger, TX 79007, next to Plaintiffs secondary-residence. Plaintiff-Murphy has previously seen Defendant-Moore driving a white Blattner-Energy pickup-truck, with either License-Plate #: AYW-956 or AYX-589.

---

[5] While "every unauthorized entry upon land of another is a trespass even if no damage is done," *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011), "the commission of a trespass does not necessarily mean the actor will be liable for damages. *Liability does not attach*, unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time." *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981) (citing RESTATEMENT (SECOND) OF TORTS § 217 cmt. a (AM. L. INST. 1965)) (emphasis added).

[6] Plaintiff's Complaint is particularly confusing because Plaintiff does not understand how paragraphs or hyphens are supposed to be utilized.

3. Subsequently, Defendant-Moore falsely-testified that Plaintiff verbally- threatened her, for which Plaintiff was acquitted by a jury of his peers in the Borger Municipal-court on Wed., Dec. 5, 2018 (12-5-18). At that trial, Defendant-Moore admitted under oath while testifying that she had a loaded-handgun in her company-vehicle, and that she sat in her company-vehicle in front of Plaintiff's residence that night until 2:00 a.m., while he was sleeping.

4. Plaintiffs five main-points & factual-assertions have consistently been that: 1. Defendant-Moore does not live at 305 Garrett St, Borger, TX 79007, & was the outsider, 2. Defendant-Moore had a loaded-weapon & Plaintiff-Murphy was unarmed, 3. Defendant-Moore was trespassing on Plaintiff's driveway, 4. Defendant-Moore started the argument, and 5. Defendant-Moore has a Misdemeanor criminal-record.

. . .

5. Therefore, it is respectfully-submitted in Plaintiff's professional legal-opinion as a factual-assertion that: Defendants made Wrongful-Entry, as a Temporary-Nuisance, onto Plaintiff-Murphy's Property without Consent or Authorization.

Comp. ¶ 10.

The first paragraph contains nothing but legal conclusions because it merely restates the elements necessary for trespass. The second paragraph also does not allege any elements of trespass because Plaintiff admits that Moore was only on the property *next to his own*. The third paragraph is not related to Plaintiff's trespass claim. The fifth paragraph once again contains nothing but conclusory statements.

The fourth paragraph is the only one that appears to contain any factual allegations. At first blush, because of its location in the Complaint, the paragraph most logically reads as containing the facts that Plaintiff alleged at the municipal trial rather than factual allegations of what occurred on August 13, 2018.

But even construing the paragraph to allege facts, it still fails to meet the *minimal* pleadings standards of Rule 12(b)(6). Plaintiff's first "main-point and factual-assertion" is irrelevant — it does not matter if Defendant Moore did not live at 305 Garrett Street because that is not Plaintiff's

property. Plaintiff's second, fourth, and fifth "main-points" are also irrelevant to the elements of a trespass claim.

This leaves Plaintiff's third point: "Defendant Moore was trespassing on Plaintiff's driveway." The statement that Moore was trespassing is a *legal conclusion*. Plaintiff does *not* allege that Moore's entry on to the driveway was unauthorized. Plaintiff does *not* allege that Moore's entry was physical, voluntary, and intentional. And Plaintiff does *not* allege that Moore's entry caused *any* injury to Plaintiff's property. Accordingly, Plaintiff has failed to state a claim for trespass.

The Court pauses to note the relief requested by Plaintiff on this claim. Once again, Plaintiff's Complaint, ¶ 11 is reproduced below:

> This Civil-Complaint seeks compensation for Nominal, Incidental, Consequential, and Punitive Damages. Nominal-Damages (*e.g., Actus Reus*-the bad-act itself/ Non-economic [Specific]: [$1.00]), suffered by Plaintiff-Murphy and caused by Defendants, are in the sum-total amount of one dollar ($1.00). Incidental-Damages (*e.g.*, Related to the incident itself/Economic [General]: Legal-Services expenses [($1,650.00], Past Mental-Anguish/Pain & Suffering [$10,000.00], & Loss of Past Earning-Capacity/Lost Wages [$1,396.43]), suffered by Plaintiff-Murphy and caused by Defendants, are in the sum-total amount of thirteen-thousand, forty-six dollars & forty-three cents ($13,046.43). Consequential-Damages (*e.g.*, As a consequence of the bad act/Non-economic [Specific]: Future Mental-Anguish/Pain & Suffering [*i.e.*, Emotional stress with physical-symptoms: $100,000.00], & Loss of Future Earning- Capacity/Lost Wages (*i.e.*, Damage to Professional-Reputation as a licensed attorney/lawyer: $100,000.00]), suffered by Plaintiff-Murphy and caused by Defendants, are in the sum-total amount of two-hundred thousand dollars ($200,000.00). Punitive-Damages (*e.g.*, Reprehensible, Extreme, & Outrageous Conduct/Non-economic [Specific]: [$852,189.72]), suffered by Plaintiff- Murphy and caused by Defendants, are in the sum-total amount of eight-hundred fifty-two thousand, one-hundred eighty-nine dollars and seventy-two cents ($852,189.72). Total-Damages, on this one individual-claim, suffered by Plaintiff-Murphy and caused by Defendants, are in the sum-total amount of one-million, sixty-five thousand, two-hundred, thirty-seven dollars and fifteen cents ($1,065,237.15).

Besides being borderline incomprehensible, Plaintiff's damage calculations are unsubstantiated in any form. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 921

(Tex. 2013) ("[T]he measure of damages in a trespass case is the sum necessary to make the victim whole, no more, no less."). Furthermore, Texas law requires heightened allegations to recover punitive, exemplary, or emotional damages from trespass. *Wilen*, 191 S.W.3d at 800 ("Exemplary damages are recoverable for the tort of trespass if the trespass was committed *maliciously*.") (emphasis added); *Coinmach Corp.*, 417 S.W.3d at 922 ("Texas courts have required a showing of *deliberate and willful* trespass and *actual property damage* before awarding damages for emotional distress or mental anguish, thereby limiting the potential for such excessive liability.") (internal marks omitted) (emphasis added). Plaintiff has not alleged Moore's actions were malicious, deliberate, or willful, nor has Plaintiff alleged Moore caused actual damage to his property.[7] The Court therefore dismisses Plaintiff's trespass claim.[8]

### B. Plaintiff fails to state a claim for malicious prosecution

To establish a claim for malicious criminal prosecution, Plaintiff must show that: (1) a criminal prosecution was commenced against him; (2) that Moore and/or Blattner initiated or procured that prosecution; (3) the prosecution terminated in Plaintiff's favor; (4) Plaintiff was

---

[7] Plaintiff is seeking these damages based solely on his trespass claim. Comp. ¶ 11 ("Total-damages, on *this one-individual claim. . .*"). The list of damages is not cumulative for all causes of action. Thus, Plaintiff is truly seeking over three million dollars in damages.

In his previous case, *Amarillo National Bank*, Plaintiff similarly used confusing language which prompted Defendant Amarillo National Bank to state the following: "Like the lack of clarity in the majority of the Complaint, it is somewhat unclear what amount of damages Plaintiff seeks in this lawsuit. In each of the four identical "Request for Relief" portions of his Complaint, Plaintiff lists various damage claims totaling $3,498,811. Because of the "one satisfaction rule", ANB presumes that the damage sought by Plaintiff amounts to $3,498,811, which would align with the demand Plaintiff made in the Civil Cover Sheet filed with the Complaint. However, in a March 2, 2020 email from Plaintiff to several representatives of ANB, Plaintiff stated that he had filed a lawsuit against ANB "for $14 million in Damages and to Quiet Title," which is appx. the total if you add each of the four "Request for Relief" claims made by Plaintiff." ECF No. 7 at 1, *Amarillo Nat'l Bank*, No. 2:20-CV-048-Z (N.D. Tex. June 2, 2020).

In response, Plaintiff stated that the damages listed are for each individual claim: "As far as Defendant's facetious-argument about the one-satisfaction rule, each Count/Claim is separate & unique. Also, two plus two equals four, just as 3.5+3.5+3.5+3.5=14." ECF No. 10 at 9, *Amarillo Nat'l Bank*, No. 2:20-CV-048-Z (N.D. Tex. June 19, 2020).

[8] Plaintiff has *expressly chosen* not to amend his Complaint. Plaintiff has specifically stated that "although he is otherwise entitled to file an amended-complaint following a Rule 12(b)(6) dismissal, Plaintiff-Murphy chooses instead to stand on the original-complaint and appeal the dismissal." *See* ECF No. 17, ¶ 5.

innocent of the charges; (5) Defendant(s) lacked probable cause to initiate the prosecution; (6) Defendant(s) acted with malice; and (7) Plaintiff suffered damages. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 815 (Tex. App.—Austin 2017), *aff'd*, 18-0068, 2020 WL 2315280 (Tex. May 8, 2020); *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006). Plaintiff's Complaint, ¶ 13 is reproduced in pertinent part below:

> Defendant-Moore falsely-testified that Plaintiff verbally- threatened her, for which Plaintiff was acquitted by a jury of his peers in the Borger Municipal- court on Wed., Dec. 5, 2018 (12-5-18).
>
> . . .
>
> As a result of Plaintiff's jury-acquittal on Dec. 5, 2018 (12-5-18), Plaintiff-Murphy factually asserts that, in his professional legal-opinion: 1. a Criminal-Prosecution against Plaintiff-Murphy was commenced on Aug. 13, 2018 (8-12-18); 2. Defendants caused the initiation and/or procurement of the Actions with False-Statements & Subsequent-Perjury; 3. the Prosecution was Terminated in the Plaintiff's favor on Dec. 5, 2018 (12-5-18); a jury factually-determined the Plaintiff's innocence; 5. there existed a clear & obvious Absence of Probable-Cause for the proceedings; 6. Defendants exhibited Malice in filing the charge; and 7. Plaintiff-Murphy suffered Damages. Further Plaintiff-Murphy factually-asserts that, in his professional legal-opinion: the motives, grounds, beliefs, and other evidence upon which the complainant relied did not constitute probable-cause, including the parties' prior bad-relations. In addition, Plaintiff-Murphy factually asserts that, in his professional legal-opinion: for the purposes of the statute of limitations, the termination of the Prosecution was tolled on both Mar. 26, 2019 (3-26-19) and April 26, 2019 (4-26-19), with novel, but repetitive, still-pending False-Charges of Disorderly-Conduct upon Plaintiff-Murphy at the same-Residence by the same discredited-Complainants in the same Municipal-court by the same Private-Prosecutor in the same Political-Subdivision!
>
> Plaintiff fails to allege any facts to establish several elements of malicious prosecution.

Indeed, many of his allegations are simply legal conclusions.[9]

---

[9] Plaintiff is an obscurant regarding the distinction between legal conclusions and factual allegations required by Rule 12. In his Response, Plaintiff states: "Is it [sic] respectfully submitted, that factual-allegations made in the Complaint will be proven in Discovery with a filed-Affidavit by Plaintiff-Murphy, and that Plaintiff-Murphy *leaves the deep philosophical-issue about Factual-Allegations versus Conclusory-Statements*, and whether sufficient-facts were alleged, to the court." ECF No. 17 at 11 (emphasis added).

First, Plaintiff fails to allege any facts whatsoever that Defendants initiated or procured any prosecution against Plaintiff.

Second, Plaintiff alleges no facts to support that he was innocent of charges on which he was prosecuted. To start, Plaintiff fails to provide any specific facts as to the specific charges that were levied against him, the basis of such charges, and the extent to which the basis of those charges was erroneous. To be sure, Plaintiff alleges that a jury found him not guilty of an undisclosed charge, but Plaintiff alleges no facts to support that he was affirmatively innocent of that charge — not just found not guilty pursuant to the criminal burden of proof standard. Additionally, without knowing the specific charges levied against Plaintiff, it is impossible to ascertain whether Plaintiff was innocent of those charges.

Third, it is similarly impossible to ascertain whether probable cause existed for the prosecution against Plaintiff because Plaintiff does not allege sufficient facts to identify the specific charges against him or the alleged basis for those charges. Nor does he allege any facts to support that no probable cause existed for the unspecified prosecution. Plaintiff apparently mistakenly believes that being found not guilty of a criminal charge under the reasonable doubt standard in Texas is equivalent to finding that probable cause did not exist to initiate prosecution against Plaintiff in the first place. However, the probable cause element asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted. *Rico v. L-3 Communications Corp.*, 420 S.W.3d 431, 439 (Tex. App.—Dallas 2014, no pet.) Plaintiff alleges no facts to establish that a reasonable person would not have believed that Plaintiff committed a crime given the facts as Moore or Blattner honestly and reasonably believed them to be before the

criminal proceedings. As such, Plaintiff has failed to allege any facts to support that no probable cause existed for the prosecution of Plaintiff.

Fourth, Plaintiff has failed to allege any facts that Blattner or Moore acted with malice because Plaintiff failed to allege Moore or Blattner initiated the prosecution. As a result, Plaintiff also necessarily fails to allege any facts that support that any such actions were done maliciously.

Fifth, Plaintiff's malicious prosecution claims must be dismissed because they are either barred or not ripe. Plaintiff alleges that the prosecution against him was terminated by jury acquittal on December 5, 2018. Comp. ¶ 13. As such, the statute of limitations ran on December 5, 2019 — one year from the termination of the prosecution. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(A). Plaintiff, however, filed his claims for malicious prosecution on August 12, 2020. ECF No. 3. As such, Plaintiff's malicious prosecution claim for that prosecution is time-barred and should be dismissed pursuant to Rule 12(b)(6).

Plaintiff simultaneously alleges that he was charged with two charges of disorderly conduct stemming from the same altercation with Moore on March 26 and April 26, 2019, which are still pending. Comp. ¶ 13. Because these cases are still pending, Plaintiff's malicious prosecution claims based on those cases are not ripe. *Jones*, 538 S.W.3d at 815; *Suberu*, 216 S.W.3d at 793 n.3. Given that Plaintiff's malicious prosecution claims are either time-barred or not ripe, Defendants are entitled to dismissal of all of Plaintiff's malicious prosecution claims.[10]

Last, Plaintiff does not allege any facts to substantiate his claim for $1,065,237.15 in damages for his malicious prosecution claim. Once again, Plaintiff baselessly lists meaningless

---

[10] Plaintiff argues the filing of these new charges tolls the statute of limitations for malicious prosecution for the previous charge. Plaintiff has cited no authority for that proposition, nor does he give a cogent argument in favor of some form of equitable tolling. Therefore, the Court will not address the argument.

and arbitrary figures without providing any specifics or reasoning behind the figures. For these reasons, the Court dismisses Plaintiff's malicious prosecution claims for failure to state a claim.

### C. Plaintiff fails to state a claim for intentional infliction of emotional distress (IIED)

Plaintiff has also failed to allege a cognizable claim of IIED. The elements of a claim for IIED are that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 455 (S.D. Tex. 2010). Once again, Plaintiff's Complaint, ¶ 16 is reproduced below:

> Plaintiff-Murphy respectfully submits, in his professional legal-opinion, as factual-assertions that: 1. the Defendants acted intentionally and/or recklessly; 2. the Defendants' conduct was extreme and outrageous; 3. the conduct caused Plaintiff-Murphy emotional-distress; and 4. the emotional-distress was severe, in fact, so outrageous in character, and so extreme in degree, as to go beyond all possible-bounds of decency, and to be regarded as atrocious, and utterly-intolerable in a civilized-community.

> *A fortiori*, Defendant-Moore threatened Plaintiff-Murphy by saying, "What the F*** is your problem, Dude? What do you think you're some kind of cop? I'm gonna get you fired, arrested, and thrown in jail, or I'll shoot you myself."

As before, Plaintiff's Complaint contains legal conclusions that merely trace the elements of IIED. Plaintiff does *not* allege any facts to support that any conduct by Moore was extreme and outrageous. As Plaintiff's own Complaint acknowledges, "conduct that does not rise to the level of conduct-actionable includes insensitive or even rude behavior, mere-insults, indignities, *threats*, annoyances, petty-oppressions, or other trivialities." Comp. ¶ 15 (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)) (emphasis added).

Here, Plaintiff's only factual allegation is that Moore threatened him. Comp. ¶ 16. Without being paired with some other action by Moore, Moore's alleged threat cannot independently support an IIED. Additionally, Plaintiff fails to allege any facts to show Moore's actions caused

Plaintiff emotional distress. As such, Plaintiff also fails to allege any facts to support that he suffered any *severe* emotional distress. Accordingly, Plaintiff has failed to state a claim for IIED.

### D. Plaintiff fails to allege facts supporting the imposition of vicarious liability against Blattner Energy

Plaintiff's claims against Blattner are premised entirely on vicarious liability. Under the doctrine of *respondeat superior*, an employer is vicariously liable for the torts of its employee only when the employee is acting within the course and scope of employment. *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 517–18 (W.D. Tex. 2020) (citing *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 576 (Tex. 2002)). An employee's conduct meets this standard when it (1) "falls within the scope of the employee's general authority" and was (2) committed "in furtherance of the employer's business" (3) "for the accomplishment of the object for which the employee was hired." *Id.* By contrast, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Id.* This standard often precludes vicarious liability for an employee's intentional torts because such acts *are not ordinarily* within the course and scope of an employee's authority or employment. *Id.* at 494 (emphasis added).

At the outset, the Court notes vicarious liability is not an independent cause of action. *Crooks v. Moses*, 138 S.W.3d 629, 637–38 (Tex. App.—Dallas 2004, no pet.). For vicarious liability to apply to a party, the other party from which vicarious liability stems, the alleged tortfeasor, must be liable for damages to Plaintiff. *Id.* If the alleged tortfeasor is not liable, then determination of agency and vicarious liability issues are never reached, and no vicarious liability exists. *Id.* As outlined above, Plaintiff has failed to sufficiently allege any causes of action against Moore and, as such, has failed to allege any claims for which vicarious liability may be imposed against Blattner.

But even if any of the underlying claims were adequately pled, Plaintiff fails to allege any facts that establish vicarious liability against Blattner. Plaintiff's only allegations that even mention Blattner are that Moore, "an off-duty employee," entered and exited a Blattner company truck and wore Blattner clothing on August 13, 2018. Comp. ¶ 10.

First, Plaintiff alleges no facts establishing that any conduct by Moore fell within the scope of Moore's general authority as an employee of Blattner. Second, Plaintiff alleges no facts establishing that any conduct by Moore was committed in furtherance of Blattner's business. Third, Plaintiff alleges no facts establishing that any conduct by Moore was for the accomplishment of the object for which Moore was hired.

Plaintiff's theory of the case would impose vicarious liability on Blattner based solely on the alleged fact that Moore drove a Blattner work truck and wore Blattner work clothes — *no matter* how unrelated the alleged tortious conduct is to Blattner's business. This theory flies in the face of Texas law, which holds vicarious liability may only be extended to an employer when the *employee is acting within the course and scope of employment.*[11] Plaintiff's theory would expose Blattner to vicarious liability for any employee that committed any intentional tort while wearing

---

[11] Plaintiff — for the first time — in his Response raises the allegation that Moore is on call 24 hours a day, 7 days a week as an employee and suggests that Blattner should be responsible for any and all actions by Moore at any time. Below is the text of Plaintiff's Response. ECF No. 17 at 10–11.

> Initially, Defendant-Blattner-Energy creates the first of many Catch-22/Circular-Paradigm Logic-Errors by suggesting that Defendant-Dalton/Moore was engaged in a Frolic not a Detour, as an off-duty employee, but ignores the fact that there is no frolic-v.-detour deviation from course/scope of authority/employment, because Defendant-Dalton/Moore was on-call 24/7. Apparently, the course & scope of authority & employment for Defendant-Dalton/Moore was to be on-call 24/7, patrol rural-facilities (*e.g.*, wind-turbines), carry a concealed-handgun both on person & in the company-truck's glove-box, drive the company-vehicle 24/7, and wear company-clothing at most times when in public. Without being lured into the predictable-trap of regurgitating three-years of law-school knowledge in order to merely avoid a frivolous 12(b)-motion: Affidavits are part of Discovery, not the pre-Answer, 12(b)(6)-Motion period.

Plaintiff's suggestion that employers can be responsible for all actions of their employees 24/7 is at complete odds with the principles of vicarious liability. Plaintiff simply ignores the vicarious liability standards of Texas and does not argue that any alleged facts from his Complaint, if taken as true, are sufficient to meet those standards. Nor does he advance any colorable argument that Texas law might accommodate his specious claims.

Blattner clothing or sitting in a Blattner truck. The Texas framework for vicarious liability expressly limits vicarious liability for intentional torts to avoid such outcomes. Accordingly, the Court dismisses all of Plaintiff's claims against Defendant Blattner.

### RULE 11 SANCTIONS

Having dismissed Plaintiff's claims, the Court turns now to the Motions for Sanctions under Rule 11 (ECF Nos. 21, 23) filed be each Defendant. The Motions were served and filed in accordance with the contours of Rule 11 and this Court's Notice and Order Setting Deadlines (ECF No. 19).

Plaintiff's Responses (ECF Nos. 26, 27) are *even more* incomprehensible than his previous filings and pleadings. Spanning a combined eighty-four pages, the Responses do not offer any coherent argument. Rather, the Responses contain large sections of copy-and-paste, *ad hominem* attacks, and fantastical allegations.

For example, on ECF No. 27 at page 5, Plaintiff states: "Now, in order to provide 'fair-notice' and clarify Defendant-Blattner-Energy's alleged-confusion from a simple-narrative, Plaintiff-Murphy will reluctantly-recite the Litany of Factual-Allegations from the Complaint." Then, Plaintiff *proceeds to copy and paste most of his complaint* into his Response. Plaintiff repeats this tactic in his other Sanctions Response. *See* ECF No. 26 at 12–14. Plaintiff had also used this strategy in his Responses to the Motions to Dismiss. *See* ECF No. 11 at 11–13. Plaintiff's attempt to force Defendants and the Court to repeatedly re-read the Complaint does not cure the Rule 12 problems delineated above.

Regarding *ad hominem* attacks: Plaintiff bizarrely and unnecessarily mentions that Moore has a nearly 20-year old misdemeanor on her record throughout his Complaint. *See* ECF No. 3 at 2, 8, 12, and 15. Plaintiff also mentions this several times in his Response Brief. *See* ECF No. 11

16

at p. 9, 11. Plaintiff accuses Moore of perjury on several different occasions in his Complaint. *See* ECF No. 11 at 8, 11, and 12. Plaintiff also baselessly makes these assertions in Response. *See* ECF No. 11 at 8, 11, and 12. Furthermore, Plaintiff accuses Moore, without a shred of evidence or plausibility, of utilizing fake names to escape liability with courts in Texas. *See* ECF No. 11 at 8, 9.

Other portions of the Sanctions Responses are simply incoherent or contain ridiculous allegations. For example, Plaintiff accuses the Defendants of trying "to obtain a Pre-Answer Judgment with Prejudice before Discovery, and more importantly, before the new U.S. Attorney for the Biden-Administration will have the opportunity to review the filings for possible criminal-charges against Defendant Dalton/Moore!" ECF No. 26 at 14–15; ECF No. 27 at 2. In another portion, Plaintiff states: "If Plaintiff-Murphy were a layman, then he would say, 'In His Humble-Opinion (*i.e.*, IMHO)', but of course, Plaintiff-Murphy is not a layman, any more than he is an *unsuccessful* State-legislature candidate, Plaintiff-Murphy is a *successful* Congressional-Candidate (*i.e.*, CO-5), who recently-obtained 3,701-votes (*i.e.*, 0.9%) and started his own, on-ballot political-party (*i.e.*, the No-Labels Party)." ECF No. 26 at 17 (emphases in original). And a perusal of the rest of the Responses just reveals more incoherence.

Objectively, the Court would be justified in ruling that Plaintiff has waived his chance to respond to the Motions. But even so, the Court *scoured* the Responses looking for arguments that would support *not* sanctioning Plaintiff. The Court found none.

### A. Legal Standards

A court may impose sanctions on a party, an attorney, or a law firm for presenting a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — for an improper purpose, such as to harass or cause unnecessary delay or expense.

17

FED. R. CIV. P. 11(b)(1), (c)(1). Also, a court may impose sanctions on a party, an attorney, or a law firm for presenting a pleading, written motion, or other paper that includes any of the following: (1) claims, defenses, or other legal contentions not warranted by existing law or by a good-faith argument for extending, modifying, or reversing existing law or for establishing new law, (2) factual contentions that do not have, or are unlikely to have, evidentiary support after a reasonable opportunity for further investigation or discovery, or (3) denials of factual contentions unwarranted by the evidence. *Id.* (b)(2) – (4), (c)(1). The court may impose any sanction necessary to deter the repetition of the conduct by others similarly situation and may include all reasonable attorneys' fees and other expenses directly resulting from the violation. *Id.* 11(c)(4).

### B. Analysis

#### 1. The claims against Blattner are not warranted by existing law

Plaintiff's vicarious liability claims against Blattner are not warranted by existing law or by a good-faith argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2). Specifically, Plaintiff's conclusory allegations that Blattner is vicariously liable for Moore's alleged trespassing because Moore was Blattner's "apparent armed-agent acting, under color of authority" ignores established Texas law on agency and instead relies only on Plaintiff's "professional legal-opinion." Plaintiff seeks to apply vicarious liability to Blattner for the alleged intentional torts of trespassing, malicious prosecution, and intentional infliction of emotional distress based solely on Moore, an off-duty employee, possessing a truck with Blattner's logo on it and wearing a Blattner uniform.

As an attorney, Plaintiff should be aware that the doctrine of *respondeat superior* extends vicarious liability to an employer for the torts of its employee only when the employee is acting within the course and scope of employment.

18

Additionally, Plaintiff's vicarious liability claims are not warranted by a good faith argument for extending, modifying, or reversing existing law or for establishing new law. Imposing liability on Blattner for the independent actions of its employees in their own personal lives for their own purposes would impose liability on Blattner for actions wholly outside of its control. This would effectively undermine the framework of vicarious liability specifically intended to fairly limit the liability of an employer to only conduct associated with the employment relationship. Vicarious liability is specifically based on the principal's control or right to control the agent's actions undertaken to further the principal's objectives. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007).

Extending vicarious liability to situations like those here, in which the employer holds no control or right to control an off-duty employee's actions unrelated to their employment, would ignore the justifications for the existence of vicarious liability and allow a party to sue a tortfeasor's employer simply to ensure a larger recovery despite a complete lack of fault or control by the employer. Such a result is untenable especially because Plaintiff has made *no* cogent, good-faith arguments in favor of such a holding.[12] Simply put, Blattner *never* should have been involved in this suit.[13]

### 2. *Plaintiff's claims against Moore are not warranted by existing law*

Plaintiff's underlying claims against Moore, upon which Plaintiff's vicarious liability claims also derive, are not warranted by existing law.

No good faith basis exists for Plaintiff's trespassing claim against Moore. In Texas, trespassing requires a plaintiff to establish that the defendant entered real property the plaintiff

---

[12] *See, supra* n. 11, which contains the *entirety* of Plaintiff's arguments in favor of imposing vicarious liability.

[13] This is not the only case in which Plaintiff baselessly drags a neighbor's employer to Court. *See* Complaint, *Murphy v. Hernandez*, 2:20-CV-282 (N.D. Tex. 2020) (suing CableOne, Inc. because the *friend* of a CableOne employee banged on his front door during a Sunday Night Football game). A motion for sanctions has been filed in that case.

owns or has a lawful right to possess the real property and caused damages. *Hillman v. City of McKinney*, 70 F. Supp. 3d 790, 804 (E.D. Tex. 2014). In this case, Plaintiff's only *factual assertion* is that Moore and her vehicle were "located at 305 Garrett St., Borger TX, 79007, next to Plaintiff's secondary-residence." (See ECF No. 3, at p.7-8. ¶10.) In doing so, Plaintiff's allegations reflect that Plaintiff's trespassing claim is meritless because Plaintiff concedes that Moore did not enter onto Plaintiff's property or property that he had a right to possess nor did Moore cause damage.

Similarly, no good faith basis exists for Plaintiff's malicious prosecution claim. To establish a claim for malicious criminal prosecution, Plaintiff must show that: (1) a criminal prosecution was commenced against him; (2) that Moore and/or Blattner initiated or procured that prosecution; (3) the prosecution terminated in Plaintiff's favor; (4) Plaintiff was innocent of the charges; (5) Defendant(s) lacked probable cause to initiate the prosecution; (6) Defendant(s) acted with malice; and (7) Plaintiff suffered damages.

Despite not alleging facts on many of these elements, Plaintiff did provide two important facts that establish the meritless nature of his malicious prosecution claim. First, Plaintiff admits that there are charges two pending against him in connection to his confrontation with Moore. Comp. ¶ 13. As such, Plaintiff cannot allege that prosecution was terminated in his favor; prosecution has not been terminated at all. Second, Plaintiff asserts the first charge was dismissed over a year before Plaintiff filed this suit. *Id.* In Texas, the statute of limitations for malicious prosecution is one year. TEX. CIV. PRAC. & REM.CODE ANN. § 16.002(a).

Accordingly, as to the prosecution on the first charge, Plaintiff's claim is barred by the statute of limitations. As to the prosecution on the second set of charges, Plaintiff's claim is not ripe because the prosecution has not been terminated. Based on Plaintiff's *own assertions*, his malicious prosecution claims were not made in good faith and lack a basis in fact or law. The Fifth

Circuit has expressly held that a claim for malicious prosecution is sanctionable under Rule 11 when the underlying prosecution is still pending at the time the claim is filed. *Crank v. Crank*, 194 F.3d 1309 (5th Cir. 1999).

Additionally, no good faith basis exists for Plaintiff's intentional infliction of emotional distress claim. In Texas, intentional infliction of emotional distress requires plaintiff to show that the alleged conduct was extreme and outrageous. *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 455 (S.D. Tex. 2010). As Plaintiff's own Complaint acknowledges, "conduct that does not rise to the level of conduct-actionable includes insensitive or even rude-behavior, mere-insults, indignities, *threats*, annoyances, petty-oppressions, or other trivialities." Comp. ¶ 15 (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)) (emphasis added). After asserting the standard of conduct for this tort, Plaintiff nevertheless again ignores legal standards and case law and alleges intentional infliction of emotional distress based on Plaintiff's allegation that Moore rudely threatened him. Comp. ¶ 16. Plaintiff's claim ignores the legal standard cited by himself, and once again raises a meritless cause of action with no basis in law or fact.

As a *licensed attorney* — as Plaintiff repeatedly reminds the Court — the lack of good faith basis for filing any of his three claims against Moore should have been obvious to Plaintiff.

### 3. Plaintiff's claims will not have evidentiary support upon further investigation

Plaintiff's Complaint contains legal contentions that lack any factual or evidentiary support and are unlikely to have evidentiary support after a reasonable opportunity for further investigation or discovery. FED. R. CIV. P. 11(b)(3).

As outlined above, Plaintiff's Complaint fails to allege any facts that, if proven, would extend vicarious liability to Blattner for Moore's off-duty actions because Plaintiff alleges no facts establishing a connection between the occurrence on August 13, 2018 and Blattner or even

Moore's employment with Blattner. Plaintiff alleges no facts supporting that Moore acted within her scope of employment or in furtherance of any Blattner objective when Plaintiff confronted Moore or when Plaintiff was prosecuted.

Plaintiff has also not alleged any facts that would establish that Moore trespassed on Plaintiff's property when she entered his neighbor's home. Nor does the Complaint allege any facts establishing any damages related to the alleged trespassing.

Similarly, the Complaint fails to allege any facts that would establish that Moore and/or Blattner initiated or procured a prosecution against Plaintiff — on this point, Plaintiff does not allege any actions by Moore or Blattner whatsoever. As such, Plaintiff also fails to allege that any unidentified actions were done with malice. Plaintiff also fails to allege any facts that would establish that Plaintiff was innocent of any charges against him, including those still pending. Plaintiff also fails to allege any facts that no probable cause existed to imitate his prosecution and that he was innocent of those specific charges. Plaintiff additionally alleges no facts that would establish that Plaintiff suffered damages related to his malicious prosecution claim.

In his Complaint, Plaintiff further fails to identify any extreme or outrageous conduct that could form the basis of an IIED claim. Nor does he identify any factual support to establish that any extreme or outrageous conduct caused the Plaintiff severe emotional distress.

Further investigation will not change the lack of factual and evidentiary support for his claims. In this case, Plaintiff has had over two years to conduct any investigation into the matters in this case — matters that Plaintiff was an eyewitness to. Plaintiff, in his Responses, has not identified *any* allegations or evidence capable of supporting his claims that would be produced by discovery. The Court has given Plaintiff ample time to amend his Complaint to include further

factual allegations. But rather than amending the Complaint, Plaintiff has chosen "instead to stand on the original-complaint and appeal the dismissal." ECF No. 17, ¶ 5.

> 4. *Plaintiff's Complaint was filed for an improper purpose — to harass Defendants.*

In light of the obviously frivolous nature of Plaintiff's claims against Moore and Blattner, the Court concludes that Plaintiff's Complaint was filed for an improper purpose — to harass Defendants in retaliation for criminal charges being brought against him. Blattner's Motion for Sanctions describes the harassment in terms the Court agrees with:

> Plaintiff's Complaint violated Rule 11(b) because Plaintiff filed the Complaint for an improper purpose, namely to harass Blattner and Moore. FED. R. CIV. P. 11(b)(1); *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). Specifically, Plaintiff filed his Complaint to retaliate against Moore and Blattner for his own prosecution stemming from his unprovoked confrontation of Moore. In doing so, Plaintiff first levies irrelevant accusations against Moore relating to alleged prior driving offenses to unnecessarily malign Moore. (See ECF No. 3, at p.2, ¶3.) Plaintiff then accuses Moore of trespassing based on his illogical contention that Plaintiff saw Moore entering and exiting a "Blattner-Energy pick-up truck... on the evening of Mon, Aug. 13, 2018... at the house located at 305 Garett St., Borger, TX 79907" and "Moore does not live at 305 Garrett St., Borger TX 79907, & was the outsider." (See ECF No. 3, at p.7-8, ¶10.) Essentially, Plaintiff's Complaint attempts to harass Moore by accusing her of trespassing based solely on her being on her mother's property, next to Plaintiff's secondary residence.

> Despite Plaintiff's Complaint clearly reflecting that Plaintiff confronted Moore unprovoked and was the aggressor in the situation, Plaintiff's harassment goes further and baselessly blames Moore and Blattner for the criminal charges and prosecution that resulted from his own behavior on that night. Plaintiff also alleges intentional infliction of emotional distress based on his alleged argument with Moore. Plaintiff seeks over a million dollars in damages as a result of the argument he apparently instigated and again fails to allege any specific damages or distress incurred by Plaintiff.

> The only thing made clear by Plaintiff's Complaint is that an unprovoked Plaintiff confronted Moore, and the confrontation lead to an argument and Plaintiff subsequently being charged with multiple crimes, at least one of which is still pending against Plaintiff. (See ECF No. 3, at p.11, ¶12.) To get even, Plaintiff filed his Complaint that lacks even the most basic factual allegations required for his fabricated claims. In fact, his complaint expressly undermines Plaintiff's

conclusory allegation that Moore trespassed on August 13, 2018 and conclusively establishes that no alleged tortious act by Moore was committed in the scope of her employment with Blattner. Plaintiff's Complaint intends to harass Blattner by including it in this suit premised on Plaintiff's confrontation of Moore despite Plaintiff having no facts that implicate Blattner in this matter or that otherwise give rise to liability by Blattner. As reflected by Plaintiff's Complaint, Plaintiff had absolutely no good faith factual basis to include Blattner in this lawsuit. Plaintiff, a licensed Colorado attorney, nevertheless elected in bad faith to file his baseless Complaint to harass Moore and Blattner in retaliation for the consequences of his own actions.

ECF No. 22 at 7–8.

Plaintiff's conduct during this case is further evidence of Plaintiff's ill-intentions in filing this suit. As stated above, Plaintiff bizarrely and unnecessarily mentions that Moore has a nearly 20-year old misdemeanor on her record throughout his Complaint. Plaintiff accuses Moore of perjury on several different occasions in his Complaint. Additionally, Plaintiff accuses Moore, without a shred of evidence or plausibility, of utilizing fake names to escape liability with courts in Texas.

The lack of professionalism in this case is even more evidence of Plaintiff's motive. Below are statements made in Plaintiff's pleadings that are unprofessional and unacceptable for a lawyer:

- In the very first-page of its Motion, Defendant-Dalton/Moore's counsel attempts to convince the court that the client is not who her name says she is, as if Defendant-Dalton/Moore is the first-woman in human-history to change her maiden-name to her husband's last-name, and then subsequently divorce him! Plaintiff-Murphy could hardly stop laughing long enough to write this response, but was quickly reminded, like a pain in the side of his torso, by the sober-reality of the terrible-damages inflicted by Defendant-Dalton/Moore, whatever name she is going-by these days. ECF No. 11 at 7.

- Defendant-Dalton/Moore's counsel is as dangerous as their client, with their false-charges, in order to dupe the Man into doing Defendant-Dalton/Moore's dirty-work of attempted-assassination, both literally & figuratively, in the form of physical-assassination on Aug. 13, 2018 (8-13-18) & character-assassination on Dec. 5, 2018 (12-5-18). ECF No. 26 at 18.

- The new U.S. Attorney for the Biden-Administration will have the opportunity to review the filings for possible criminal-charges against Defendant-Dalton/Moore! ECF No. 26 at 14–15.

24

- Like Defendant-Dalton/Moore herself, Defendant-Dalton/Moore's counsel is thus far able to manipulate the naïve-government, first State and now federal, into placing *Pro-Se* Plaintiff-Murphy on the defensive with false-charges, while ignoring Damages inflicted on Plaintiff-Murphy. ECF No. 26 at 15.

- [There is] little hope for *Pro-Se* Plaintiff-Murphy to adequately-respond to [the motions for sanctions] . . . just three-weeks (3-wks.) after an **UNSUCCESSFUL** constitutional-coup at the Nation's Capitol by Trump Neo-Nazis. ECF No. 26 at 3 (bolding and underlining in original).

In sum, Plaintiff has wasted both Defendants' time and money *and* wasted the Court's resources by filing a Complaint that is wholly in violation of Rule 11. Furthermore, as stated in footnote 13, Plaintiff's frivolous filings in this case are part of a larger pattern of frivolous filings in this Court. The Court therefore concludes the appropriate sanction to further deter Plaintiff's sanctionable filings — and to recompense Defendants' fees and costs expended in response to Plaintiff's Complaint — is to award fees and costs for both Defendants. *See* FED. R. CIV. P. 11(c)(4) ("The sanction may include . . . if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").

CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that Defendants' respective Motions to Dismiss (ECF Nos. 7, 12) are **GRANTED.** Plaintiff's claims are **DISMISSED WITH PREJUDICE** for failure to state a claim. Furthermore, the Court **GRANTS** the Defendants' Motions for Sanctions (ECF Nos. 21, 23). Defendants are hereby **ORDERED** to submit an application for attorney fees and costs. *See Yellow City Remodeling, LLC v. Yellow City Construction, LLC*, 2:20-CV-178-Z, 2020 WL 9211188, at *4–6 (N.D. Tex. Oct. 6, 2020) (explaining how applications for attorney fees are adequately supported). The applications are due **Friday, May 14, 2021.**

**SO ORDERED.**

May _6_, 2021.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE